Putnam J.
delivered the opinion of the Court.* [After stating the pleadings.] The question then is, whether the plaintiffs shall recover for the use of Parker. It appears that the defendant has ho interest in the suit, excepting only in so far as Grimshaw may be unable to respond any sum which the defendant may be held to pay in this action. The real parties eventually interested are Parker and Grimshaw. And it is not a new position in a court of law, that the Court will look behind the parties to the record, to discover the parties in interest, and to administer justice to them, so far as may he, consistently with the rules of the law.
It is contended for the plaintiffs, that the agreement between Parker and Grimshaw cannot in law furnish any defence for the defendant, because they are technically strangers. But it sufficiently appears from the pleadings, that Parker and Grimshaw are the parties in interest The money procured by the defendant was applied for the use of Grimshaw, and it is not material to inquire, whether he originally authorized the defendant to obtain it or not, because Grimshaw has adopted the acts of the defendant. He has made an arrangement for the payment or extinguishment of the bond, as if he had been the *466 principal. And Parker had an interest that the bottomry bond uPon l11"5 vessel should be removed. If the defendant was legaily authorized to hypothecate the vessel, then Parker was interested as a surety for Grimshaw, the principal. If it should have been made manifest by the decision of a competent court, that the defendant had no authority to pledge the vessel, still Parker would have sustained considerable trouble and expense in the defence. So it was clearly his interest to have the matter accommodated. His vessel would thereby be liberated from the claim of the plaintiffs.
If the agreement had been made by the parties to the bottomry bond, we think it might have been a good accord and satisfaction, notwithstanding a less sum was received than the amount that might become due. It is not true, universally, that the payment of a less sum shall not be a satisfaction for a greater. As where the money is paid before it becomes due, or at a different place from that appointed for the payment, the law will intend a satisfaction, from the particular advantage or accommodation which the party had from the payment under those circumstances. PinneVs case, 5 Co. 117. And a fortiori, the exception to the general rule would apply to the present payment of a debt which was contingent and might never become due, as was the case at bar; for the arrange ment for the extinguishment of the bottomry bond was made while the ship was upon her voyage, and when it was uncertain whether she would arrive or not at her destined port. Vide Peytoe's case, 9 Co. 79 b; Co. Lit. 212 b; Com. Dig. Accord, A 1, and B 2 ; Bac. Abr. Accord and Satisf. A, Viner, Accord, A, pl. 42 ; Pinnel's case, 5 Co. 117 a.
But this agreement was not made by the parties to the bond, and there might be technical objections to the plea of accord and satisfaction, as well as to the plea of payment. It would not be strictly true, that the bond was paid by the defendant to the plaintiffs.' But it would not follow, that because there are technical objections to the plea of accord and satisfaction, or of payment, the facts admitted by the pleadings may not constitute a defence.
The case of Sturdy et al., Assignees of Blackiston, a Bankrupt, v. Arnaud, 3 T. R 599, has a strong bearing *467 upon that point. It was an action of debt on a bond from the defendant to the bankrupt, for the payment of an annuity of £ 100 by quarterly payments. The defendant pleaded substantially, that two days after giving the bond, he lent £ 200 to the bankrupt and another, and that it was agreed by a writing not under seal, that the defendant should retain the quarterly payments of the annuity until the £ 200 should be discharged; and that the arrears of the annuity were insufficient to satisfy the same. Blackiston became a bankrupt before the first quarterly payment became due, and his assignees insisted that the annuity should be paid to them, notwithstanding the agreement. They contended that the writing was no defeasance, because it was not sealed ; that there was no lien, because nothing had been pledged; and that it was a contingent agreement, depending on the defendant’s life. But the court held it to be equivalent to solvit ad diem,. The clear legal inference from this case is, that although there may be technical difficulties and formal objections to the pleas of accord and satisfaction and of payment, there may nevertheless be such a state of facts set forth in a special plea, as may be a sufficient bar, though not pleaded in either of those forms.
We have seen that Parker is not a mere stranger to this transaction. He is interested to have his vessel free from the claims of the nominal plaintiffs upon a bottomry bond. It is true, indeed, that Grimshaw, having received the funds procured by the bond, and so having adopted the act of his agent (the defendant), would be bound to indemnify Parker. Being thus situated, Parker requested Grimshaw to give the notes and assign the property therein set forth particularly, for the purpose and with the intent and upon Parker’s undertaking to cause the bond to be extinguished. The notes, &c. were delivered accordingly. Now if the matter had rested there, in mere agreement between Grimshaw and Parker, it would not have taken away the remedy of the plaintiffs upon the bond. They would not have been at all affected by the agreement, and Grimshaw must have sought his remedy by an action against Parker for the breach of it. But it did not rest in mere agreement between Grimshaw and Parker. Parker has executed his agreement, so far at least as to have made full *468 satisfaction to the plaintiffs for the bond. He has acquired possession of the bond. Shall he now be admitted to say that he has procured the bond to be assigned, and not to be extinguished ? We think not. It is in the nature of an estoppel in pais; where a man is concluded by matter of fact in the country without writing, as by the acceptance of an estate, &c.; Co. Lit. 352 a. No man is permitted to allege contrary to what he has once admitted or agreed to. If one should become the lessee of his own fee simple estate, he shall not, during the term, deny the title to be in his lessor.
The payer or donor has a right to appropriate the money which he advances. If the former paid with one intent, and the receiver accepted with another, the intent of the payer shall prevail. Vin. Abr. Accord, C, pi. 20. But there is no good reason to suppose that Parker had a different intent from Grimshaw. The funds were advanced and accepted for the definite purpose of extinguishing the bond. If Parker, in point of fact, obtained the assignment of the bond from the plaintiffs, without disclosing his agreement, the law will not permit him to prove it, because it would be contrary to the declaration which he must have made to Grimshaw, to induce him to part with his funds. Parker must be considered as the agent of Grimshaw in that matter. Suppose the maker of a note, intending to relieve Ms indorser, should give the money to bis clerk to pay to the holder, and the clerk should represent to the holder that he was paying his own money, and induce the holder to indorse the note without recourse, for the use of the clerk ; could it be maintained that the clerk could recover against the maker or the first indorser, if those facts were proved ? We think not. Parker having taken up the bond from the plaintiffs, he shall be estopped to say that he procured it for himself and not for his employer, contrary to his undertaking. The- law would, intend that it was received in the performance, and not in the violation of the trust he had undertaken. If the fact were otherwise, the law will not permit him to prove it against his own engagement. So in Chapman v. Searle, 3 Pick. 38, the Court would not permit one who had given a writing not under seal, acknowledging that he had received 300 barrels of beef on storage for another, to *469 deny that he ever had the beef, or to prove that .he affair was a mere paper arrangement. He was held to be concluded by his undertaking in pais. The funds were intrusted to Parker for a particular purpose, and he received the same accordingly, viz. to extinguish the bond for the benefit of Grimshaw. He cannot act for himself in that matter.
A decision on the like principle was made by Buller J., in Weymouth v. Boyer, 1 Ves. jun. 416; which was a case somewhat analogous'to the one at bar. There, Bryant being indebted to Weymouth, they agreed that Williams, a factor, should sell 45 hogsheads of tobacco belonging to Bryant, the proceeds to be paid to Weymouth. The factor undertook to do so. He proceeded to sell the goods, but wanted to pay himself first for a claim which he had against Bryant. But Buller J. would not permit it. Now Parker stands in the same relation to Grimshaw, that Williams did to Bryant. Williams claimed to retain the money for his own use on account, instead of applying it according to his undertaking for his principal; and Parker makes a similar claim.
So in Burn v. Brown, 2 Stark. Rep. 272, where the master of a ship, at the request of the factor of the owner, delivered the certificate of registry to the factor, in order that he might pay the tonnage duties, it was held that he could not make any further use of it on his own account, and maintain a lien upon it for a general balance due to him in respect of the ship.
How would the case stand if the law were otherwise, and would permit Parker to act for himself during his agency for Grimshaw, in regard to the subject matter intrusted to him ? He would avail himself of the funds furnished by Grimshaw, and he would compel the defendant to pay the bond also. Much litigation and great circuity of action, so abhorrent to the law, would be caused. Parker would recover in the plaintiffs’ name, but for his own use, against the defendant. The defendant would have his action against Grimshaw; and the latter would have his action against Parker for the breach of his agreement. But this would not be so bad, if there were no insolvency in the case. Justice would at length take place. It is not so, however, in the case at bar. It is said, and not *470 denied, that Grimshaw has failed. Parker would have the funds furnished by Grimshaw, to set off in any accounts against him, and the defendant would be left to such satisfaction as could be obtained from a bankrupt. The loss would fall eventually upon an innocent agent, who had no personal interest in the matter.
But it has been argued for Parker, that he has a right at least to recover the money which he advanced to the plaintiffs, viz. the one thousand dollars, which he paid to the plaintiffs, instead of paying them with Grimshaw’s note for that sum. It is conceded, “ that there is no doubt, that as far as Grim shaw’s means went, it is part payment, and that if Grimshaw is not in a technical sense a stranger, this defendant can and perhaps ought equitably to avail himself of it.” The bond is good for the whole or nothing. There has been no partial extinguishment.
But we think it very clear that Parker accepted the means which Grimshaw furnished, as the consideration for Parker’s • undertaking to cause the bond to be extinguished or cancelled If he could accomplish that object for less, it was for his ad vantage. If he was obliged to pay more, it was to be to his loss. He must be considered as taking the risk, whether the plaintiffs would take Grimshaw’s notes, or whether Parker would be obliged to cash them. The evident construction of the agreement, as disclosed in the plea, is, that if Grimshaw would furnish him with those notes and funds, he would cause the bond to be extinguished. That then became his affair. He relied upon the sufficiency of the means furnished, to enable him to accomplish it. He trusted Grimshaw. And it would be a construction violent and inequitable, to hold the defendant responsible for the sufficiency of the means so furnished by Grimshaw, inasmuch as the plea does not show or state that the funds were delivered and accepted with any such con dition or limitation, but directly the contrary ; and inasmuch as the bond was given by the defendant for the sole benefit of Grimshaw.
We have constantly kept in view the argument for the real plaintiff in interest, that the hypothecation of his vessel for the benefit of the charterer, was a violation of his right. That is *471 the admission of Grimshaw. It was to compensate for that injury, that he undertook to make satisfaction according to Parker’s request. If without any such arrangement Parker had procured an assignment of the bond to his own use, it is very clear that he could have enforced his remedy against the defendant, who acted in behalf of Grimshaw, as well as against Grimshaw himself. But having accepted a satisfaction from one, the other would of course be discharged, so far as Parker’s claim extended. The matter then would remain to be adjusted between the master and the charterer. If the defendant, the master, satisfied Parker, the remedy would be against the charterer and owner for that voyage, who had had the benefit of the funds. If the charterer had made satisfaction to Parker, there would have been an end of the matter, for that would operate instanter to discharge the master. The facts pleaded specially and admitted by the demurrer, we are of opinion, are equivalent to a payment of the bond before the day. They would clearly be so, if the nominal plaintiffs had received the compensation made to themselves, with an undertaking to cancel the bond therefor ; and we all think, that Parker the assignee has, by his own voluntary acts and agreements, placed himself in the same situation. Then, as has been repeatedly suggested, as between the master (who is the defendant) and Grimshaw the charterer, the latter is the real debtor ; the master is to be regarded as surety. And he may legally avail himself of any thing which his principal has done, to cause the bond to be extinguished.
This case has been twice argued with great ability on both sides. Our learned brother, the chief justice, having been retained as counsel in this cause before his appointment, we rer gret much that we cannot have the aid of his enlightened mind to assist us in our decision. But all the other members of the Court are of opinion, that the fifth plea in bar is good.

 Shaw C. J. did not sit in the case.